UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,
as Broadcast Licensee of the November 27, 2004
Barrera/Morales, Program

                        Plaintiff,                              **REPORT AND**
                                                                   **RECOMMENDATION**
                                                                     CV-05-3692 (SJ) (JMA)

      -against-

RAMON RODRIGUEZ, Individually and as an
officer, director, shareholder and/or principal of
MAMBO BAR CORP. d/b/a MAMBO BAR &
RESTAURANT a/k/a MAMBO BAR, INC., and
MAMBO BAR CORP. d/b/a MAMBO BAR &
RESTAURANT a/k/a MAMBO BAR, INC.

                              Defendants.
----------------------------------------------------------------X

A P P E A R A N C E S:

    Julie Cohen Lonstein, Esq.
    The Lonstein Law Office, P.C.
    1 Terrace Hill, PO Box 351
    Ellenville, NY 12428
    *Attorney for Plaintiff*

**AZRACK, United States Magistrate Judge:**

       By order dated January 14, 2006 this matter was referred to the undersigned by the Honorable Sterling Johnson, Jr. for a report and recommendation on damages. Plaintiff has made an application for damages, attorney's fees and costs against defendants RAMON RODRIGUEZ, individually and as an officer, director, shareholder, and/or principal of MAMBO BAR CORP. d/b/a MAMBO BAR & RESTAURANT a/k/a MAMBO BAR, INC., and MAMBO BAR CORP. d/b/a MAMBO BAR & RESTAURANT a/k/a MAMBO BAR, INC (hereafter "Mambo Bar &

Restaurant"). In addition, plaintiff requests a permanent injunction restraining defendants from further violating 47 U.S.C. § 605(a) (1996). For the reasons below, I respectfully recommend that plaintiff be awarded $2,747.50 in statutory damages, with a $10,000 increase for defendants' willful violation of the statute, and attorney's fees and costs of $1,687.50 for a total damages award of $14,435.00. In addition, I respectfully recommend denying the request for a permanent injunction.

## I. BACKGROUND

Plaintiff Garden City Boxing Club, Inc. ("Garden City Boxing") was a broadcast licensee of the professional fight between Barrera and Morales on November 27, 2004 (Dkt. No. 1: 08/04/05 Compl. ¶ 12; Dkt No. 6: 11/09/05 Pl.'s Aff. for Default ("Pl.'s Aff."), Ex. A). Plaintiff expended funds to obtain the rights to the program and contracted with thirty-two establishments in New York State to broadcast it (Pl.'s Aff. ¶¶ 5, 12, Ex. B). Defendants' establishment did not contract with plaintiff to legally broadcast the boxing match. (Id. ¶ 6).

The interstate transmission of the match was electronically coded ("scrambled") to protect its access from those who did not pay or properly obtain a license for its viewing. By failing to contract with plaintiff for the rights to air the boxing match in their establishment, defendants would not have had the ability to receive the signal without (i) the use of a "blackbox", which is purchased for a fee and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; (ii) misrepresenting their commercial nature to the cable company in order to receive transmission at the residential price of $54.95; or (iii) the use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment that had already purchased the broadcast at the residential price of $54.95 (Pl.'s Aff. ¶ 10).

On November 27, 2004, without authorization, defendants intercepted and received the

signal for the Barrera/Morales boxing event. Defendants then played the fight for patrons in their commercial establishment, Mambo Bar & Restaurant, located at 411 Morgan Avenue, Brooklyn, New York 11206 (Id., Ex. C: Piracy Aff.). An investigator for plaintiff found that, when he visited the Mambo Bar & Restaurant between 12:01 and 12:04 a.m., there were thirty patrons present for the broadcast of the fight (Id.).[1] The investigator estimated that the Mambo Bar & Restaurant's approximate capacity was fifty patrons (Id.).

Plaintiff filed a complaint on August 4, 2005 (Dkt No. 1: 08/04/05 Compl.). Defendants were served on August 22, 2005 (Dkt Nos. 3 & 4: 09/06/05). Defendants failed to answer or otherwise move, and, on January 14, 2006, Judge Johnson granted plaintiff's motion for a default judgment (Dkt No. 10: 01/24/06 Order).

## II. DISCUSSION

### A. Default

Defendants' default is deemed an admission of the use of an unauthorized device to intercept coded and scrambled cable transmissions. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default). Defendants have thus admitted to violating both sections 553 and 605.

---

[1] The Piracy Affidavit states that the investigator visited the Mambo Bar & Restaurant on November 28, 2004, not November 27, 2004. However, the description of the fighters matches that of those fighting on November 27, 2004 and the affidavit contains other obvious typographical errors.

Plaintiff, however, must prove damages before the entry of a final default judgment. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The District Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine, 109 F.3d at 108. Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (internal quotations omitted).

**B.      Damages**

Plaintiff seeks statutory damages for defendants' violation of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a), as well as enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Section 553 prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so . . ." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." Id. § 605(a). The court has discretion in assessing the amount of damages under these provisions. See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).

**1.      Statutory Damages**

Plaintiff seeks damages for defendants' violations of 47 U.S.C. §§ 553(a)(1) and 605(a). Section 553(a)(1) prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." Id. § 605(a).

Where a defendant admits to violating both sections, a plaintiff may elect to recover damages under § 605, which provides for greater recovery than § 553. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 131 n.5 (2d Cir. 1996), cert. denied sub nom. Noel v. Int'l Cablevision, 519 U.S. 929 (1996). Section 605 states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, instead of actual damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). As a result of defendants' default, Garden City Boxing has been unable to ascertain the extent of defendants' violations. Therefore, plaintiff has elected to recover statutory damages.

The range of statutory damages for a violation of section 605(a) is $1,000 to $10,000. Id. The court has discretion to determine the number of violations and assess damages for each violation. Id. The statute does not clearly define "violation"; rather, the court decides which of the defendants' acts constitutes a violation.

The court has two options when assessing damages under section 605. First, it can multiply the number of patrons present at the unauthorized broadcasting by a specific dollar amount, typically the customary charge for the pay-per-view event being shown. See, e.g., Taco Rapido Rest., 988 F. Supp. at 111 (awarding statutory damages of $50 per patron); Cablevision Systems Corp. v. 45 Midland Enterprises, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding statutory damages of $50 per

patron). Alternatively, where the exact number of patrons is unknown, the court can impose damages based on what it "considers just." Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (awarding $5,250 in statutory damages); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000.00 in statutory damages).

Other factors that the court may consider in assessing a plaintiff's damages are "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." Cablevision Sys. Corp. v. De Palma, No. CV-87-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. CV-84-1155, slip op. at 4-5 (E.D.N.Y. May 20, 1988)).

Garden City Boxing invests millions of dollars annually promoting boxing broadcasts. With each establishment that pirates signals, plaintiff suffers an erosion of its profits and is consequently forced to pass off costs to lawful residential and commercial customers through increased pricing (Pl.'s Aff. ¶¶ 12, 15-16).

There is no information whatsoever about defendants, other than a drawing of the interior of the restaurant at 411 Morgan Avenue provided by plaintiff's investigator. I am therefore inclined to conclude that defendants' showing of the fight the night of November 27, 2004 was a single violation, and to utilize the per-patron method to establish damages. An affidavit from Garden City Boxing's president states that a personal residence would have been charged $54.95 to view the fight (Pl.'s Aff. at ¶ 10B). I recommend that the per-patron amount be set at $54.95, the amount that each

patron who was able to view the fight at Mambo Bar & Restaurant would have paid to view the fight from home, which they might have elected to do if they did not have access to the fight at the neighborhood restaurant and bar for a five dollar charge (See Piracy Aff. ("I paid $5 to enter the establishment.")). During his four minute visit, the investigator's three head counts revealed thirty patrons present. (Id.) However, he estimated that the facility could in fact hold fifty patrons at maximum capacity. (Id.) It is entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity. Therefore, I recommend that Garden City Boxing be awarded $2,747.50 in statutory damages for the violation.[2]

### 2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii), which provides for enhanced damages if the violation was committed willfully and for commercial advantage or private financial gain. Willfulness is defined as "disregard for the governing statute and an indifference for its requirements[,]" Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985), and is established by the fact that an event is broadcast, without authorization, through a defendant's cable box. See Googies Luncheonette, Inc., 77 F. Supp. 2d at 490 ("[s]ignals

---

[2] This sum was derived by the multiplication of the $54.95 price an individual would pay to view the boxing match at home on a pay-per-view channel and the number of patrons Mambo Bar & Restaurant could have reasonably accommodated at a single time. While it is true that patrons may have come and gone throughout the night, increasing that number of 50 patrons to more with their influx and outflow, plaintiff has provided no additional information other than its investigator's four minute observation and it is on that observation that the court bases its estimation. See Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005).

do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Section 605(e)(3)(C)(ii) allows for increased damage awards against persons or entities operating commercial establishments that show the unauthorized programming to patrons. See Googies Luncheonette, 77 F. Supp. 2d at 491 (increasing award by $12,000); Taco Rapido Restaurant, 988 F. Supp. at 111-12 (increasing award by $5,000).

Courts use a variety of factors in determining whether a defendant's willful conduct justifies increased damages. These factors are i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; or iv) charging of a cover charge or premiums for food and drinks. See Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec Y Caridad, Inc., No. 01-CV-6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001). Courts also consider a plaintiff's significant actual damages. Id.

In this case, Garden City Boxing seeks the maximum increased award of $100,000, but has offered no evidence that defendants have pirated events other than the Barrera/Morales fight broadcasted on November 27, 2004, or that defendants advertised the broadcast of the event, or that the restaurant charged a premium on food and drinks. However, defendants did charge a five dollar cover charge. Additionally, defendants' conduct was nonetheless willful by virtue of their illegal interception of plaintiff's broadcast. Consequently, I recommend that the damage award be increased by $10,000 for a willful violation of the statute. This addition reflects plaintiff's estimated damages, defendants' likely commercial gain in collecting a five dollar cover charge and selling food and drink to between thirty and fifty patrons, and the need to deter future theft of service.

### C. Permanent Injunction

Plaintiff requests a permanent injunction enjoining defendants from further violations of §§ 553 or 605, pointing to the fact that many business establishments that pirate one event have or will pirate additional broadcasts in the future. A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Main Events/Monitor Prods. v. Batista, No. 96-CV-5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). The first condition is satisfied because injunctions are available remedies pursuant to §§ 553(c)(2)(A) and 605(e)(3)(B)(i). Second, a party seeking a preliminary injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. See Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975). Plaintiff has failed to satisfy this condition. In this case, there is no evidence that plaintiff will suffer irreparable harm or that the statutory and enhanced damages are insufficient to deter future conduct. I therefore recommend that plaintiff's request for a permanent injunction be denied.

### D. Attorney's Fees and Costs

#### 1. Attorney's Fees

Pursuant to section 605(e)(3)(B)(iii), plaintiff is entitled to reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Under the "lodestar" method, attorney fees are determined by taking "the number of hours reasonably expended on the litigation [multiplied] by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). Reasonable hourly rates are determined by reference to "the prevailing marketplace rates in the

community for similar services by lawyers of reasonably comparable skill, experience and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994). To receive such fees plaintiff must present time records to substantiate its fee request. See New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." Id. at 1148.

In the present case, attorney Julie Cohen Lonstein has submitted an affidavit setting forth the total attorney's fees, with an attachment itemizing the work done, hours expended, and the amount due. Ms. Cohen Lonstein performed a total of 4.75 hours in this litigation at a rate of $200 per hour, the time in which she researched and developed the case, drafted the summons and complaint, and prepared the default motions and inquest papers, among other tasks (Dkt No. 6: 11/23/05 Att'y Aff.). Applying that rate, plaintiff is entitled to an award of $950 in attorney's fees for 4.75 hours of work and an additional $187.50 for 2.5 hours of paralegal work. This court finds that the amount of time spent was reasonable in this case and recommends an $1,137.50 award for attorney's fees.

### 2. Costs

Garden City Boxing seeks reimbursement for costs in the amount of $800, which includes $250.00 for the court filing fee, $200.00 for the cost of service of process, and $350.00 for investigative costs. "In federal court, the taxable costs for which a party may seek reimbursement include the cost of deposition and trial transcripts, witness fees and mileage, interpreting costs, and the cost of certain small photographs." Time Warner Cable of New York City v. Sanchez, No. 02-CV-5855, 2003 WL 21744089, at * 5 (S.D.N.Y. July 8, 2003); see 28 U.S.C. § 1920; Fed. R. Civ. P. 54. "There is no provision, however, for a prevailing party to be awarded the cost of its

investigator." <u>Sanchez</u>, 2003 WL 21744089, at *5 (denying investigator costs because there is no statute or federal rule awarding such costs and because plaintiff failed to submit in its affidavit the total number of hours spent on the investigation and the hourly investigative rate). However, because in this case Garden City Boxing did provide an affidavit and invoice detailing the amount of time spent on the investigation and the rate, this court, in its discretion, will allow for a $100 reimbursement of the investigator's fees. <u>See</u> <u>Bello</u>, 2005 WL 2496062, at *6 n.2.

Based on the foregoing, I recommend that Garden City Boxing be awarded $550 in costs,[3] representing filing fees, costs for service of process, and a portion of plaintiff's investigatory expenses.

---

[3] This sum includes $250 filing fee, $200 service of process fee, and $100 towards the investigator's fees.

## III. CONCLUSION

For the above reasons, I respectfully recommend that plaintiff be awarded $2,747.50 in statutory damages, with a $10,000 increase for defendants' willful violation of the statute, and attorney's fees and costs of $1,687.50 for a total damages award of $14,435.00. I respectfully recommend that plaintiff's request for a permanent injunction be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: Brooklyn, New York
March 20, 2006

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

Sent to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill, PO Box 351
Ellenville, New York 12428
Attorney for Plaintiff

Ramon Rodriguez
411 Johnson Ave.
Brooklyn, New York 11206
Defendant

Mambo Bar Corp.
411 Johnson Ave.
Brooklyn, New York 11206
Defendant